## RUTHERFORD'S REPRESENTATIVES vs. MARTIN'S HEIRS.

APPEAL from the court of the sixth district.

MATHEWS, J. delivered the opinion of the court. This action was commenced in the court of probates of the parish of Rapides, to compel a final partition and distribution of the estates of Abraham Martin, and Mary, his wife, &c.

It is a contest between the heirs of these persons, arising out of the manner in which their

Purchasers of land at probate sale, cannot call on the succession for the value of improvements put on it by third persons, if it were sold such as it belonged to the succession.

West'n District,
Sept. 1824.

RUTHER-
FORD'S REP-
RESENTATIVES
vs.
MARTIN'S
HEIRS

successions had been administered, and parti-
ally partaken by said heirs previous to the in-
stitution of the present suit.   Two of them were
dissatisfied with the judgment of the probate
court, and appealed to the district court, which
rendered a judgment different from that given
in the court of probates in the first instance;
and from this last judgment the plaintiffs ap-
pealed to this court.

The appellants to that court were Fr. By-
num and his wife, and W. Turnbull and his
wife, who are here appellees.

The principal difficulty in fixing a just basis
for the partition demanded, arises out of the
manner, in which the property belonging to
these successions was purchased by the heirs,
at a probate sale thereof.   In buying, they ac-
quired property to various amounts, and be-
came responsible for the prices to the mass of
the heirs for any surplus above their individual
shares, &c.   The present appellees appear to
have been amongst those who bought beyond
their dividends, as evidenced by the proces-
verbal of the sale.   They now claim deduc-
tions from these apparent prices, on account of
want of title in their ancestors, in some of the
lands purchased, a deficit of quantity in others,

and a failure to obtain possession of some personal property. The moveable property which Bynum complains of not having received, in pursuance of this purchase, forms a very inconsiderable item in his wife's claim of deduction; but so far as proven by the testimony of Cureton and Mulholan, ought to be admitted. Of the defects in several tracts of land purchased by Turnbull, and which constitute a part of his wife's portion of the estates of her ancestors, the record appears to us to contain sufficient evidence, viz: the recovery in the suit of Scott vs. Thomas, in relation to the tract on B. Rapide, and the testimony of M'Crumen, the surveyor, in respect to the two on the right bank of B. Robert. A *pro rata* price, for these deficiencies, in comparison with that given for the whole number of acres or arpens, supposed to have been bought by the purchaser, ought to be allowed as a deduction from the charges of the succession against her.

The most important matter of dispute between the parties litigant, and perhaps most difficult of settlement, is the claim of reduction in the price of the tract of land of 800 arpens, purchased by Bynum and his wife, situated on B. Rapide, and to which he alleges that the

West'n District,
*Sept.* 1824.

RUTHER-
FORD'S REPRE-
SENTATIVES
*vs.*
MARTIN'S
HEIRS.

RUTHER-
FORD'S RLPRE-
SENTATIVES
*vs.*
MARTIN'S
HEIRS.

successions of A. & M. Martin had not at the time of sale a full and complete title, &c.

It is admitted, that this tract of land formed a part of the community of acquets and gains of the ancestors of the appellees, at the time of the death of A. Martin, the husband, subject to be divided between his heirs and the surviving wife in equal portions. Subsequent to the death of their father, and previous to that of their mother, three of his heirs, viz: John M., Robert and Coleman Martin, conveyed the whole of said tract of land to a purchaser, and bound themselves in warranty. Coleman died before his mother, and she by law became his heir; accepted the inheritance without the benefit of an inventory, as none is shewn or alleged to have been made; and consequently subjected herself to the performance of all his obligations; among which was that arising from the warranty, of at least one third of the value of the land sold, as above stated. Notwithstanding the incumbrances produced by this sale from part of the heirs of A. Martin, on the property thus alienated; at the probate sale of the successions of both husband and wife, it was sold as if the title to the whole had not been impaired or invalidated to any part thereof; and

at this sale Bynum and his wife became pur-
chasers for the price of 35,000 dollars. If by
this purchase the buyers had obtained a clear
title to the property, they would be answerable
to the rest of the heirs for five-sixths of the price.
But they could acquire an indefeasible right to
that portion alone which had not effectually
been alienated by the three heirs, who sold and
conveyed to A. Jackson. At the time they
made that sale, they had a right to three-four-
teenths of the whole tract, as heirs to their fa-
ther. They were however bound in warranty to
the vendor for the whole. The mother who
succeeded to Coleman as heir, and who was
owner of one half the land as partner in the
acquets of her husband and herself, became in
her capacity of heir to her son responsible to
his vendor, in warranty to the amount of one
third of said tract of land. In consequence of
this obligation on her part during her life, and
which decended to her heirs after her death,
her succession may be considered as reduced
in relation to this particular property, to one-
sixth thereof instead of one-half. Two of the
vendors to Jackson, viz: J. and Robert being
heirs to their mother, each for one-sixth part
of her succession, acquired one-third of her re-

maining sixth on the land by them sold and transferred to their vendor title to that amount in addition to the three-fourteenth of the whole tract as acquired from their father's succession and sold by these and Coleman. The price given by Bynum and his wife may be considered as representing the thing bought, and for which he ought to be held responsible to the mass of the heirs of A. and M. Martin (except John and Robert,) for that portion alone which corresponds with the quantity of land to which he acquired a just and legal title from the succesions of their ancestors; and this will be that which remains after deducting one-third and three-fourteenths of the whole, and one-third of a sixth part. We are of opinion that the appellees ought to be allowed all reasonable and ordinary expenses to which they were subjected in gaining possession of the land, thus bought at the probate sale, as above stated.

The principal error into which the district court appears to us to have fallen, is the allowance of a deduction on account of improvements made on the land purchased by the person then in possession, under the sale from John, R. and C. Martin. It is true that the pur-

chasers under the successions of A. and M. Martin might possibly have been bound to remunerate the bona fide possessors for their ameliorations of the property; but they bought it such as it appertained to these successions, that is, without improvements, and the price of 35,000 dollars must be considered as paid for the naked land.

It is therefore ordered, adjudged and decreed, that the judgments, both of the district court and court of probates, be avoided, reversed and annulled. And it is further ordered, that the cause be r emanded to the court of probates with instructions to the judge thereof to proceed to the partition and distribution of the estates of A. and M. Martin, in pursuance of the principles laid down in this opinion, the costs of the appeal from the district court to this, to be paid by the appellees, &c.

*Thomas* for plaintiffs, *Johnston, Wilson* and *Oakley* for the defendants.